UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 17-10291 |
| | ) | |
| RICHARD G. CODY, | ) | VIOLATIONS: |
| | ) | |
| Defendant. | ) | Investment Advisor Fraud |
| | ) | (15 U.S.C. §§ 80b-6 and 80b-17) |
| | ) | |
| | ) | Making a False Declaration under Oath |
| | ) | (18 U.S.C. § 1623(a)) |

INDICTMENT

The Grand Jury charges that:

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.      RICHARD G. CODY ("CODY") was an individual who resided in Massachusetts

and New Jersey.

2.      In or about and between June 2005 and August 2016, CODY was a registered

investment advisor with various investment advisory firms (collectively, the "Firms").   Prior to

being a registered investment advisor, from in or about and between March 1997 and May 2005,

CODY was a registered broker representative with three other brokerage and investment advisory

firms in the area of Boston, Massachusetts.

3.      Boston Investment Partners, LLC ("BIP") was a limited liability company in

Massachusetts and New Jersey.   From at least in or about February 2011 to October 2016, its

website presented BIP as a "financial planning firm that offers brokerage and advisory services."

1

The BIP website also advertised CODY as an "Investment Advisor" who had "always practiced the concept, 'The client always come first.'"

4.      Victims 1, 2 and 3, and/or their now deceased spouses (collectively, the "Victims") entrusted their retirement savings to CODY's management, including their retirement savings and 401(k) employee retirement plans that CODY rolled over into individual retirement accounts ("IRA's").

5.      CODY periodically met with the Victims, reviewed the balance of their IRA's and discussed the different ways in which he had invested their money to last through their retirement years.

## Investment Advisor Fraud and Deceit

6.      Between in or about May 2005 and August 2016, while registered and acting as an investment advisor to the Victims, CODY engaged in acts, transactions, practices and a course of business that operated as a fraud and deceit upon the Victims and that were fraudulent, deceptive, and manipulative.   Over the years of his relationship with the Victims, CODY falsely assured them that their retirement savings were secure, when in fact he knew they were not.   Contrary to his false, fraudulent and manipulative assurances, by at least sometime in 2014, the total value of the Victims' IRA's was substantially diminished.   In order to conceal these losses, CODY provided the Victims with fraudulent account statements and tax documents.

7.      In or about January 2008, the Financial Industry Regulatory Authority ("FINRA") filed a complaint against CODY alleging, among other things, that he had engaged in unsuitable and excessive trading in his clients' accounts.   Because of the complaint, FINRA suspended

CODY from associating with any FINRA member firm for one-year, starting on or about January 7, 2013.

8.      CODY never advised the Victims of his one-year suspension out of concern that further client complaints would lead to further scrutiny from regulators and his loss of employment as a registered broker and investment advisor.

## CODY's Fraudulent and Deceptive Acts and Practices

9.      Set forth below are examples of CODY's acts, practices, and course of business that were fraudulent and deceptive on or about various dates between 2012 and August 2016:

## Victim 1

10.      Both "Victim 1" and her now deceased husband ("Victim 1-Husband") were residents of Rockland, Massachusetts. Victim 1-Husband retired in or about 2001 and invested his entire retirement savings, approximately $420,000, with CODY.

11.      Over the years, until Victim 1-Husband's death in July 2011, CODY assured Victim 1-Husband that his retirement savings were secure.   CODY repeatedly told Victim 1-Husband that the monthly payment he was receiving was coming solely from gains on his retirement accounts.   CODY assured Victim 1-Husband that his principal investment of approximately $400,000 was still intact.   In fact, by the time of Victim 1-Husband's death in July 2011, the total value of his retirement accounts had dropped to about $55,000.

12.      After Victim 1-Husband's death, CODY repeatedly provided false assurances to Victim 1 concerning the value of her retirement accounts, even as their value was, in fact, declining.

13.     By February 2014, Victim 1's retirement account no longer had sufficient funds to pay her monthly distribution.   CODY never informed Victim 1 that her savings were gone. Instead, between in or about February 2014 until September 2016, CODY continued to make monthly payments by wiring the money to Victim 1 from his personal bank accounts to conceal the fact that the money in her accounts was gone.

14.     In or about April 2016, Victim 1 told CODY that she needed $10,000 from her retirement accounts.   CODY informed Victim 1 that the $10,000 would be a loan she needed to repay within thirty days.   Thereafter, CODY emailed an IRA withdrawal form from the custodian of Victim 1's IRA ("the Custodian") to Victim 1's daughter to give to Victim 1.   Following CODY's instructions, on or about April 29, 2016, Victim 1 faxed the form back to CODY.

15.     Weeks later, after not receiving the $10,000 payment, Victim 1 called CODY who falsely told Victim 1 he had invested her money in an annuity.   Thereafter, on or about May 12, 2016, CODY emailed Victim 1's son a withdrawal form from a different brokerage firm ("Firm A") with Victim 1's name handwritten on the form, but with an account number that was not Victim 1's account.   In fact, CODY knew that Victim 1 did not have any account at Firm A and falsely told Victim 1 that she had an annuity to conceal the fact that the money in her retirement account was gone.

16.     In early 2016, Victim 1 asked CODY for a copy of her 1099-R tax form to determine the total amount of taxable distributions from her IRA account for her 2015 income taxes. Thereafter, on or about February 17, 2016, CODY emailed the brokerage firm holding Victim 1's IRA account and asked for a copy of Victim 1's 1099-R for the year 2013.   CODY

4

subsequently provided Victim 1 with an altered 1099-R that falsely stated she had received a total

of approximately $31,000 in taxable distributions for 2015.

17.    As CODY well knew, Victim 1 did not receive any distributions from her IRA in

2015 because her IRA was empty.   CODY emailed Victim 1 the altered 1099-R to conceal the

fact that CODY had misrepresented the actual value of her account.

### Victim 2

18.    Victim 2, a resident of Rockland, Massachusetts, retired in or about April 2002 and

invested his entire retirement savings, approximately $510,000, with CODY.   Prior to investing

with CODY, Victim 2 met with CODY and CODY explained how he would invest Victim 2's

retirement savings.

19.    Thereafter, from approximately 2005 to approximately 2016, CODY met with

Victim 2 at Victim 2's residence in Rockland, Massachusetts several times a year.   During these

meetings, CODY led Victim 2 to believe that his retirement savings were secure and that his

monthly distribution payments were coming from gains on his savings.   CODY told Victim 2

that he had invested Victim 2's retirement savings in secure bonds.   At times, CODY showed

Victim 2 documents that stated Victim 2 was earning a return of between 13 and 19 percent a

year.

20.    In fact, by approximately the end of 2008, the total value of Victim 2's retirement

savings had declined precipitously and there was only a total of about $86,000 left in his

accounts.

21.     By approximately June 2014, Victim 2's retirement accounts no longer had sufficient funds to pay his monthly distribution, a fact that CODY knew and failed to disclose to Victim 2.   Instead, between in or about June 2014 and September 2016, CODY continued to make monthly payments by wiring payments to Victim 2 from his personal bank accounts to conceal the fact that the money in his IRA account was gone. When Victim 2 asked CODY about the change in the method of payment, CODY falsely told him that the banks had altered the way they were distributing retirement payments and assured Victim 2 that everything was fine.

22.     Near the end of 2015, Victim 2 asked CODY for his 1099-R for 2015.   CODY subsequently provided Victim 2 with an altered 1099-R that falsely stated that Victim 2 had received approximately $31,000 in taxable distributions for 2015.

23.     During a meeting with Victim 2 in the spring of 2016, CODY showed Victim 2 a document that falsely stated that Victim 2 still had approximately $489,000 in retirement savings. In fact, in 2016, as CODY well knew, Victim 2's retirement account was nearly empty with a balance of about $43.

### Victim 3

24.     Victim 3 is resident of Maryland who retired in approximately 2002 and invested her entire retirement savings of approximately $400,000 with CODY.   CODY told Victim 3 that he would invest her retirement money in mutual funds and bonds.

25.     At the end of 2003, Victim 3's now-deceased husband ("Victim 3-Husband"), also invested his retirement savings, approximately $585,000, with CODY.

26.     CODY regularly met with both Victim 3 and Victim 3-Husband to discuss their

retirement accounts.   During each of these meetings, CODY assured them that their retirement savings were secure and that their monthly distributions were coming from gains on their investments, and not their principal investment.   At times, CODY also gave them documents that purported to show the true balances of their retirement accounts.

27.      In or about 2007 or 2008, CODY suggested that Victim 3 and Victim 3-Husband invest a portion of their money in a Real Estate Investment Trust ("REIT").   Over the years, CODY led Victim 3 and Victim 3-Husband to believe that the bulk of their retirement money was invested in a REIT.

28.      In approximately March 2015, CODY met with Victim 3 and Victim 3-Husband to go over their retirement accounts.   During the meeting, CODY showed Victim 3 and Victim 3-Husband a document that purported to show that Victim 3 and Victim 3-Husband had a combined total of more than $1.2 million in their retirement accounts.   In fact, at that time, Victim 3 and Victim 3-Husband only had about $255,000 left in their retirement accounts.

29.      CODY met with Victim 3 and Victim 3-Husband for the last time in approximately March 2016.   During the meeting, CODY showed them a document that indicated that they still had more than $1.2 million in retirement savings.   Along with the document, CODY told Victim 3 and Victim 3-Husband that a substantial portion of their money, more than $800,000, was in a REIT and provided them a corresponding account number. In fact, at that time, Victim 3 and Victim 3-Husband only had about $255,000 left in their retirement savings.

30.      Furthermore, the account number that CODY provided to Victim 3 and Victim 3-Husband belonged to another person.   After Victim 3-Husband died in September 2016, CODY

falsely informed Victim 3 that the account was with another company and had a different account number. In fact, CODY knew that Victim 3 did not have such an account and that a substantial portion of Victim 3's retirement money was gone.

### CODY's False Testimony in a Sworn SEC Deposition

31.     On or about December 12, 2016, the U.S. Securities and Exchange Commission ("SEC") filed a civil enforcement lawsuit in U.S. District Court in the District of Massachusetts, in case number 1:16-cv-12510-FDS. As part of that SEC enforcement action, the SEC conducted a deposition of CODY on or about March 29, 2017. CODY's testimony was under oath and recorded.

32.     During the deposition, CODY made the following statements in response to the following question regarding CODY's discussion with Victim 1 about her retirement savings being invested in an annuity, as described above in paragraph 15:

> Q:     Had you ever discussed [Firm A] with [Victim 1]?
>
> A:     No. As I said, in 15 years of a relationship with [Victim 1-Husband] and [Victim 1], there was never a distribution form she filled out other than the IRA distribution form from Pershing, there was never a mention of an annuity, there was never a mention of [Firm A], there was never an account statement that received from [Firm A], there was never a piece of paper that had [Firm A] anything on it that I ever sent them, mentioned to them, showed them, in 15 years.

33.     This statement was materially false and misleading because, as CODY knew and as described above in paragraph 15, CODY had in fact told Victim 1 that she had an annuity and emailed her son a withdrawal form from Firm A to give Victim 1.

34.     During the same deposition, CODY made the following statement in response to the following questions regarding the 1099-R tax form for the year 2015 that CODY sent to Victim 2, as described above in paragraph 22:

> Q.     But [Victim 2] account did not make $31,000 in distributions, is that right, in 2015?
>
> A.     Correct.
>
> Q.     Did you send this form to [Victim 2]?
>
> A.     No, I did not.

35.     This statement was materially false and misleading because, as CODY knew and as described above in paragraph 22, CODY had in fact provided Victim 2 with an altered 1099-R that falsely stated that Victim 2 had received approximately $31,000 in taxable distributions for 2015.

## COUNT ONE
### (15 U.S.C. §§ 80b-6 and 80b-17 – Investment Advisor Fraud)

36.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 35 of this Indictment and further charges that:

37.     At various times in or about and between May 2005 and September 2016, in the District of Massachusetts and elsewhere,

## RICHARD G. CODY

defendant herein, being an investment advisor, by the use of the mails and by use of means and instrumentalities of interstate commerce, directly and indirectly, did willfully engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and did willfully engage in acts, practices, and courses of business which were fraudulent, deceptive, and manipulative.

All in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

## COUNT TWO
### (18 U.S.C. § 1623(a) – Making a False Declaration under Oath)

38.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 35

of this Indictment and further charges that:

39.     On or about March 29, 2017, in the District of Massachusetts and elsewhere,

### RICHARD G. CODY

defendant herein, while under oath and testifying in a proceeding before and ancillary to a court

of the United States, namely in a deposition that was part of a U.S. Securities and Exchange

Commission enforcement action pending in the District of Massachusetts, knowingly made a false

material declaration.   Specifically, CODY gave the following underlined false testimony in

response to the following questions:

> Q:     Had you ever discussed [Firm A] with [Victim 1]?
>
> A:     No.   As I said, in 15 years of a relationship with [Victim 1-Husband] and [Victim 1], there was never a distribution form she filled out other than the IRA distribution form from Pershing, there was never a mention of an annuity, there was never a mention of [Firm A], there was never an account statement that received from [Firm A], <u>there was never a piece of paper that had [Firm A] anything on it that I ever sent them, mentioned to them, showed them, in 15 years.</u>

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT THREE
### (19 U.S.C. § 1623(a) – Making a False Declaration under Oath)

40.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 35

of this Indictment and further charges that:

41.     On or about March 29, 2017, in the District of Massachusetts and elsewhere,

## RICHARD G. CODY

defendant herein, while under oath and testifying in a proceeding before and ancillary to a court

of the United States, namely in a deposition that was part of a U.S. Securities and Exchange

Commission enforcement action lawsuit pending in the District of Massachusetts, knowingly

made a material false declaration.   Specifically, CODY gave the following underlined false

testimony in response to the following questions:

> Q.     But [Victim 2] account did not make $31,000 in distributions, is that right, in 2015?
>
> A.     Correct.
>
> Q.     Did you send this form to [Victim 2]?
>
> A.     No, I did not.

All in violation of Title 18, United States Code, Section 1623(a)

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Neil J. Gallagher, Jr.
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS; September 26, 2017

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

9/26/17 @ 12:40pm